IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THERESA J. HENSON KAYMAK | : | CIVIL ACTION |
| *on behalf of herself and all others* | : | |
| *similarly situated* | : | No. 10-6532 |
| | : | |
| v. | : | |
| | : | |
| AAA MID-ATLANTIC, INC. | : | |

### MEMORANDUM

**Juan R. Sánchez, J.**                                                                                      September 7, 2012

In this putative class action, Plaintiff Theresa J. Henson Kaymak alleges Defendant AAA Mid-Atlantic, Inc. (AAA) overcharged her for her 2008-2009 AAA membership when she renewed her membership after it had expired. Kaymak brings claims for breach of contract and unjust enrichment. AAA asks this Court to dismiss Kaymak's Class Action Amended Complaint in its entirety for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging Kaymak lacks constitutional standing to assert her claims. For the following reasons, AAA's motion will be granted.

**FACTS**

AAA is a non-profit automobile club that provides services and benefits to its members, including roadside assistance services and discounts from various third-party vendors, such as hotel chains, railroads, and car rental agencies. To maintain a membership in good standing, members are obligated to pay their membership dues annually for a twelve-month membership. AAA offers three levels of membership, the least expensive of which is the "basic" level. For this level of membership, the annual dues at all times material hereto were $61.25.

Kaymak initiated her membership with AAA in 1997, and had a basic membership throughout her tenure as a AAA member. In November 2007, Kaymak again purchased the basic

level of membership, and AAA issued her a three-year membership card. The face of her membership card noted it was "valid thru" November 15, 2010 (three years from the date of renewal), with "dues billed annually." Def.'s Proposed Findings of Fact & Conclusions of Law, AAA Ex. 5. Thus, Kaymak's 2007-2008 membership expired for dues purposes on November 15, 2008. Sixteen days later, on December 1, 2008, Kaymak's car became disabled with a flat tire. That same day, knowing her membership had expired and believing she had lost all of her member benefits, Kaymak accessed AAA's website to renew her membership, and paid her dues for another year of membership.[1] Instead of expiring on December 1, 2009, twelve months from the date she paid her dues, Kaymak's renewal membership expired on November 15, 2009, twelve months from the date her previous membership expired.

Kaymak alleges AAA "backdates" the start date of renewal memberships to the prior year's expiration date, causing "AAA members [to] receive less than the full 12 months of membership for which they bargained." Am. Compl. ¶ 2. Kaymak contends she has suffered an injury in fact as a result of this practice, namely, "the dollar loss for the [16-day] period of her membership for which she paid but did not receive due to AAA's unlawful policy to backdate the length of her membership to less than 12 months." Pl.'s Proposed Findings of Fact and Conclusions of Law 2. Accordingly, Kaymak filed this class action lawsuit on behalf of herself and other similarly situated consumers who allowed their memberships to expire, and who allegedly were overcharged by AAA when they subsequently renewed their annual memberships.

**DISCUSSION**

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil

---

[1] After renewing her membership, Kaymak called AAA to request roadside assistance, which AAA provided without charge.

Procedure 12(b)(1) governing motions to dismiss for lack of subject matter jurisdiction because standing is a jurisdictional matter. Fed. R. Civ. P. 12(b)(1); *Knauss v. U.S. Dep't of Justice*, No. 10-2636, 2012 WL 176685, at *1 (E.D. Pa. Jan. 20, 2012). Jurisdiction must be established as a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). A motion to dismiss pursuant to Rule 12(b)(1) may be brought as a facial or factual challenge. *See Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008). Where the motion challenges jurisdiction on the face of the complaint, the court must only consider the allegations of the complaint and documents referenced therein in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). By contrast, where, as here, the existence of subject matter jurisdiction is challenged in fact, "no presumptive truthfulness attaches to the plaintiff's allegations," and the court may consider evidence outside the pleadings to satisfy itself of its power to hear the case.[2] *Id*. As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing elements of standing. *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 191 n.4 (3d Cir. 2011). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Common Cause of Pa v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).

---

[2] Up until she submitted her findings of fact and conclusions of law, Kaymak maintained this motion was brought as a facial challenge to this Court's jurisdiction. However, as AAA asserts, and as Kaymak now agrees, AAA's motion is not merely a facial attack. Thus, the Court is not confined to the allegations in Kaymak's Complaint, but may consider evidence outside the pleadings, including the documentary evidence and deposition testimony submitted to this Court, as well as the testimony presented at the evidentiary hearing on AAA's motion. *See Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997) (citing *Mortenson*, 549 F.2d at 891).

A plaintiff has constitutional standing to bring a claim in federal court if the plaintiff demonstrates (1) she has suffered an "injury in fact" that is (a) concrete and particularized, and (b) actual or imminent; (2) the injury is fairly traceable to the defendant's challenged action; and (3) it is likely, as opposed to merely speculative, that the injury will be prevented or redressed by a favorable decision of the court. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *Friends of Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In its motion, AAA focuses on the first requirement, "injury in fact." This requirement ensures the plaintiff has a "personal stake" in the litigation. *See The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir. 2000). An injury is "concrete" if it is "distinct and palpable, as opposed to merely abstract," *N.J. Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 238 (3d Cir. 2011) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)), and it is "particularized" if it "affect[s] the plaintiff in a personal and individual way," *Lujan,* 504 U.S. at 560 n.1. In addition, an injury is "actual or imminent" if it is "actually occurring" or there is a "realistic danger of sustaining a direct injury." *N.J. Physicians*, 653 F.3d at 238 (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979)) (explaining "there must be a 'genuine probability' that a future injury will occur in order for that injury to be sufficiently imminent").

AAA alleges Kaymak cannot demonstrate she suffered any injury as a result of AAA's "backdating" of her membership because Kaymak was not without any of her member benefits during the 16-day period at issue. On October 27, 2009, AAA implemented a grace period policy which extends all member benefits for the first 30 days after a membership has lapsed. Thus, during the initial 30-day period from November 15, 2009, when Kaymak's membership expired, through

December 15, 2009, Kaymak remained a member in good standing and was eligible for all of the AAA services to which she was contractually entitled under her basic level of membership.[3] Accordingly, AAA argues Kaymak actually received more than the 12 months of membership for which she bargained, as she in fact received over 13 months of membership, and not 11½ months as she contends.

For her part, Kaymak argues she was not aware of AAA's grace period policy and had never been notified of such a policy. As a result, Kaymak argues the grace period policy was not part of her contract because it was not disclosed to her, and thus, does not apply to her.

AAA initiated its grace period policy in late 2009. As of October 27, 2009, the policy was published in AAA's Member Benefits Guide, which is available to all members on the AAA website. Hr'g Tr. 64:3-15, Sept. 8, 2011. The policy, with respect to membership renewal, was set forth as follows:

> AAA records memberships on a monthly basis. For example, a member joining on January 3rd, while eligible for most services immediately enjoys an annual membership that expires February 1st of the following year, rather than January 3rd. When someone renews during the 59 days following expiration, THEIR ORIGINAL DATE JOINED AND EXPIRATION DATE ARE REINSTATED and the member's years of membership continue to accrue uninterrupted. Note also, the annual membership dues will be due one year from the reinstated expiration date which will be less than twelve months from the late payment date. Because AAA-Mid-Atlantic continues to serve members in the 60-days following the expiration date, these members are receiving 12 months of benefits. Those people who rejoin 60+ days after expiration will receive a new join and expiration date and any accrued years of

---

[3] AAA's grace period policy also extends to members whose memberships have been lapsed for 31-59 days. In those instances, a member remains in good standing until the 60th day after the date the membership expired, and is entitled to all member benefits (with one exception) within that time period. Hr'g Tr. 63:5-64:1, Sept. 8, 2011. Because Kaymak's membership had been lapsed for less than 30 days, the grace period policy that applies to a lapse of 31-59 days is not relevant here. The Court notes, however, that Kaymak's 2008-2009 membership, which she did not renew, was not actually cancelled until January 14, 2010—13½ months after her December 1, 2008, payment, and 14 months after the expiration date of her prior year's membership.

membership will be lost.

AAA Ex. 3, AAAMA-000011 & 11(a). Kaymak was familiar with the AAA website, as she had paid her yearly membership dues through the website since 2002. Hr'g Tr. 142:10-12, Sept. 8, 2011 (stating Kaymak paid online for the past six years); AAA Ex. 4.

Nevertheless, even if Kaymak was not aware of the grace period policy, and had been accustomed to losing her membership privileges on the date her membership expired, she still received a full 12 months of AAA membership even after her December 1, 2008, renewal, since she continued to enjoy all member benefits until December 15, 2009, and her membership was not actually cancelled until January 14, 2010. As a result, Kaymak did not actually lose any benefits during the 16-day period at issue here and therefore cannot claim any injury on this set of facts.[4]

Kaymak next argues that AAA's grace period is "routinely not made available to members who were within the alleged Grace Period." Pl.'s Proposed Findings of Fact & Conclusions of Law ¶ 25. AAA's "call detail reports" reveal some of its members whose memberships had been lapsed for less than 30 days after the grace period was implemented, *were* in fact charged for roadside assistance, in contravention to the policy. Accordingly, Kaymak argues the grace period policy is "illusory." *Id*. 2, 10-13.

While AAA's grace period policy was introduced on October 27, 2009 (the date on which the policy was first posted on AAA's website), it was not distributed to the call takers who interface with members seeking roadside assistance until November 9, 2009. Implementation of this new policy was not completely void of error. However, AAA's call detail reports from the 16-day period

---

[4] Moreover, Kaymak's lack of knowledge about the grace period policy does not support her argument either since she admitted to not having any occasion to use her AAA membership during the 16-day period at issue.

6

between November 15, 2009, and December 1, 2009, reveal a low error rate, particularly in light of the fact that AAA had notified its call takers of this new policy less than one week earlier. Specifically, of the 53 members who sought roadside assistance during this 16-day period whose memberships had been lapsed for less than thirty days (and who were therefore within the grace period), nine of those members were told they would be charged for the roadside service in contravention of the grace period policy.[5]  However, of those nine members, only two, or roughly 3.7%, were actually charged for the basic roadside service they sought.  This small percentage of error does not support a finding that AAA's grace period policy is illusory.

Kaymak also argues AAA's grace period is illusory because it is solely a period for AAA to secure renewal membership payments.  It is true AAA members are responsible for paying their dues before their membership expiration date.  And thus, once a membership has expired, AAA will seek membership renewal dues.  However, AAA will still provide roadside assistance, without charge, for any member whose membership has lapsed for less than 30 days, as it did for 51 of the 53 members discussed above.

In support of her arguments that she pleaded a cognizable injury, Kaymak cites to *Argento v. Wal-Mart Stores, Inc.*, 66 A.D.3d 930, 888 N.Y.S.2d 117 (N.Y. App. Div. 2009), and *Dupler v.*

---

[5] Kaymak asserts there were not nine members, but 11-12 members, who were advised they would be charged for roadside assistance despite the grace period policy.  At the evidentiary hearing on AAA's motion to dismiss, AAA objected to three of those members, explaining that even though the call report may reflect a member was "advised of charges," this does not mean the member was ultimately charged in connection with the service, or asked for renewal membership dues, but instead means the member was merely advised there may be a different charge associated with that particular service request (i.e., charges that may be above and beyond the service AAA provides, such as in the context of a lockout where a locksmith may be needed).  H'rg Tr. 44:24-45:3, 52:15-56:8, Sept. 8, 2011.

*Costco Wholesale Corp.*, 249 F.R.D. 29 (E.D.N.Y. 2008).[6] The thrust of the plaintiff's complaint in *Wal-Mart* was that the defendant engaged in deceptive business practices by routinely backdating renewal memberships at Sam's Club stores, and that as a result of this backdating policy, members who renewed after the date on which their one-year memberships expired were nevertheless required to pay the full annual fee for less than one full year of membership. 66 A.D.3d at 931-32. The opinion concerned only the timeliness of the plaintiff's class action certification motion and thus, there was no discussion about class certification (although the Court suggested such a class would be certified upon (timely) renewal of the motion), *id*. at 933, or details about the plaintiff's allegations or the Sam's Club membership benefits and policies. In *Costco*, class certification was granted based on the plaintiff's allegations that a similar backdating policy at Costco was a deceptive trade practice. 249 F.R.D. at 34. Specifically, the plaintiff alleged that when a member renewed her membership before the expiration date, or up to six months after the expiration date, it was Costco's policy to backdate that membership for a 12-month period beginning on the expiration date of the old membership. *Id*. The annual memberships Costco sold were a prerequisite to access to its stores, and thus, only paid members are able to shop at Costco stores. *Id*. Once the membership expires, members are required to renew the membership to retain their shopping privileges. *Id*. Both of these cases are distinguishable from the facts before this Court.

In *Wal-Mart* and *Costco*, neither the Sam's Club member nor the Costco member received any benefits of membership once the backdated renewal membership expired. Thus, when Sam's

---

[6] Kaymak also cites to a "Minute Order" from a third case, *Thompson v. Auto. Club of S. Cal.*, No. 30-2009-00285190, currently pending before the Honorable Kim G. Dunning in the Superior Court of California, Orange County, in support of her argument. However, Kaymak failed to furnish this Court with a copy of that Order, or its date, and none of the documents in that case are available online. (This Court learned there are over 400 docket entries in that case and that without a date, the Minute Order, of which there are multitudes on that docket, could not be provided to this Court.)

Club or Costco backdated the start date of a renewed membership, the member in fact received fewer than 12 months of benefits because the member had no benefits while the membership was lapsed, and did not receive any benefits at the end of the membership to account for the lost time. As a result, Sam's Club and Costco were charging their members for 12-month memberships, but providing less than 12-months' worth of benefits.

By contrast, the backdating at issue here did not result in Kaymak receiving fewer than 12 months of benefits. To the contrary, despite failing to pay her dues on or before her renewal membership expired on November 15, 2009, Kaymak remained a member in good standing during the 30-day period after her membership had expired, and remained eligible for all of the AAA services to which she was contractually entitled under her basic level of membership. Thus, although Kaymak was charged for 12 months of membership, Kaymak in fact received more than 12 months of membership for the same price. In fact, by "backdating" her membership, AAA did not deprive Kaymak of any membership services, or overcharge her for membership, but instead furnished her with benefits for 30+ days longer than the period for which she bargained. (Indeed, Kaymak received a total of 13½ months of membership from her date of renewal on December 1, 2008, as her membership was not actually cancelled until January 14, 2010).[7] Accordingly, *Wal-Mart* and *Costco* are inapposite in that neither defendant conferred any benefits on its members after

---

[7] Kaymak also asserts there is "no penalty" if you decline to renew your membership after the year is up and then start a new membership at a later time. Hr'g Tr. 114:9-15, Sept. 8, 2011. In fact, Kaymak argues a member who allows her membership to lapse for more than 60 days and thereafter renews, receives more than one year of membership upon renewal for the same price as if that member renewed less than 60 days after the expiration date and AAA "backdated" the membership. AAA refers to such special offer as its "salvage program." H'rg Tr. 78:12-79:9. While Kaymak is correct in that AAA does not impose a penalty per se, accrued years of membership are lost, AAA Ex. 3, and what Kaymak fails to acknowledge is that no member benefits are available to the member who decides to take that risk and allow the cancellation of her membership between the 60th day and whenever the member decides (or remembers) to renew her membership.

their memberships had expired.

Kaymak also cannot establish an injury with respect to the lodging, railroad, or car rental benefits afforded to AAA members. Although Kaymak asserts the most valuable benefit of her AAA membership was for these third-party discounts, Pl.'s Proposed Findings of Fact & Conclusions of Law ¶ 18; Hr'g Tr. 105:1-14, Sept. 8, 2011, she did not recall having a need to make use of these benefits from November 15, 2009, through December 1, 2009. Even if she had, as explained above, all membership benefits were available to her. Hr'g Tr. 63:5-22, 91:22-91:1, Sept. 8, 2011. Despite testifying she did not have the occasion to use her card during this 16-day period of time, Kaymak argues she did not use her card (with a future expiration date of November 15, 2010, prominently displayed on the front), because she believed her membership had expired and she no longer had any AAA benefits. First, this Court notes that all 53 members previously discussed used their cards, despite the expiration of their memberships. Had Kaymak similarly used hers, or read about her member benefits online, she would have learned otherwise. Nothing prevented Kaymak from using her card, except for herself, and a self-inflicted injury, such as this was, falls short of establishing standing. *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) ("No [party] can be heard to complain about damage inflicted by its own hand."). In fact, standing requires the injury be traceable to the *defendant's* challenged action. *Summers*, 555 U.S. at 493; *Lujan*, 504 U.S. at 560.

Finally, Kaymak cannot demonstrate an actual injury (i.e., one that is actually occurring) or an imminent injury (i.e., a realistic danger of sustaining a direct injury). *N.J. Physicians*, 653 F.3d at 238. In 2009, Kaymak did not renew her membership with AAA, and in March 2010, Kaymak relocated to Turkey, far beyond the reach of AAA's Mid-Atlantic operations here.

Kaymak cannot demonstrate that during the 16-day period about which she complains

between November 15, 2009, and December 1, 2009, she suffered an injury in fact. At the hearing, Kaymak testified about the 16-day period, stating she did not recall a need to use her AAA membership card for any purpose: she did not have any problems with her car requiring AAA roadside assistance services, and she did not recall having a need to seek a discount for travel, hotel accommodations, car rental, or other such benefits offered by AAA. Moreover, Kaymak did not recall any occasion on which she was denied AAA services, or charged for any AAA services. Even though Kaymak alleges economic injury, and "[e]conomic injury is clearly a sufficient basis for standing," *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005) (internal quotations and citations omitted), Kaymak has not demonstrated standing. Accordingly, AAA's motion to dismiss Plaintiff's Class Action Amended Complaint is granted.

    An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.